GRANVILLE M. HUMPHREY *et al.* Appellees, *vs.* SAMUEL R. HUDNALL *et al.* Appellants.

*Opinion filed February 20, 1908—Rehearing denied April 8, 1908.*

1. TRUSTS—*when trust is not manifested by memoranda.* Memoranda in a book kept by the holder of the legal title to a lot, showing the cost of a house built thereon and the amounts contributed by other persons, do not manifest a trust in favor of such persons, where there is nothing which purports to state any agreement with reference to the property or any liability or understanding in that regard.

2. SAME—*when trust is not manifested by will.* A will directing the sale of real estate as the absolute property of the testator and expressly providing that certain sums shall be paid from the proceeds to his mother and brother makes the legacies a lien upon the real estate until they are paid but does not manifest any trust in the testator; but the executrix will hold the title in trust for such legatees, by virtue of the legacies being charged upon the land.

3. REAL PROPERTY—*when a purchaser takes subject to equity of legatee.* One who holds a chattel mortgage securing a note which has been allowed as a claim against the deceased maker's estate and who has notice that the will of deceased charges his real estate with the payment of certain specific legacies, does not, by giving to the executrix a receipt for his claim and an insignificant sum in cash in exchange for a deed to certain of the real estate, take the land freed from the lien of the unpaid legacies, particularly where the will does not authorize a sale to pay debts.

APPEAL from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

WARNOCK, WILLIAMSON & BURROUGHS, for appellants.

B. G. WAGGONER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was a bill filed in the circuit court of Madison county by Granville M. Humphrey and Jennie Humphrey, appellees, against Samuel R. Hudnall and Minnie Hudnall, appellants, for the purpose of establishing a resulting trust in a lot in the town of Bethalto to the extent of $824.

After a hearing in open court the court was of the opinion that the evidence did not show a resulting trust, but leave was given to amend the bill so as to charge the existence of an express trust, and the bill having been so amended a decree was rendered granting the relief prayed for, from which the defendants have appealed.

In 1887 Mary P. Humphrey and her two unmarried sons, Edward W. Humphrey and Granville M. Humphrey, the latter being then about seventeen years old, agreed to build, together, a house for their residence in Bethalto. Mrs. Humphrey had $700 and Granville $124, which he had earned. A lot was bought and the title taken in the name of Edward W. Humphrey, the older son. Mrs. Humphrey and Granville furnished the money they had. Edward furnished the rest, and the house was completed, the total cost of the house and lot being about $1680. When the house was completed the three moved into it. Shortly afterward Edward was married and until his death resided in the house with his mother and Adda, his wife. Granville resided there also until 1889, but not afterward.

Edward died in January, 1899, leaving a will executed in 1889, containing the following provisions: "I direct and order that all my real estate that I may own at the time of my death, in the town of Bethalto, in the county of Madison and the State of Illinois, shall be sold within twenty (20) years from the time of my death, at private sale, by my executors, and they are hereby authorized and empowered to execute a deed to the purchasers thereof; and until such real estate is sold my executors may occupy, rent, lease or make such use of said real estate as they may desire, and all moneys or revenue arising therefrom shall belong jointly and equally to my executors. When said real estate is sold, I direct that from the proceeds of said sale my beloved mother, Mary P. Humphrey, shall be paid the sum of $700, and to my beloved brother, Granville M. Humphrey, shall be paid the sum of $124, and the balance

of the proceeds of said sale shall be paid to my beloved wife, Adda B. Humphrey. I devise one lot and house, with other buildings thereon, the same being lot No. 75, situate in the town of Dudley, county of Edgar and State of Illinois, to my beloved mother, Mary P. Humphrey. Lastly, I give, bequeath and devise unto my beloved wife, Adda B. Humphrey, the remainder of my real estate and personal property, of every kind and character, forever." The will was admitted to probate and the wife and mother of the testator were appointed executrices.

Mary P. Humphrey continued to occupy the house until the fall of 1899, when she died leaving a will, by which she devised to her son, Granville, her interest in the premises to the extent of $700. All of Granville's interest has since been transferred to his wife, Jennie. In April, 1900, Adda B. Humphrey, individually and as surviving executrix of the will of Edward W. Humphrey, executed to Minnie Hudnall a quit-claim deed of the premises for a purported consideration of $1100, but in fact she received only $30 or $35 in cash and a receipt for $1060 from Samuel R. Hudnall, the husband of Minnie Hudnall, in payment of a claim allowed against the estate of Edward W. Humphrey on a note signed by him and Adda B. Humphrey and secured by a chattel mortgage on his personal property. On the same day a petition for the approval of said sale was presented to the county court and it was approved. On the same day, also, Adda B. Humphrey filed a claim for $1778 against the estate of Edward W. Humphrey, and it was allowed. This suit was begun September 25, 1906, and, the claim of a resulting trust having been abandoned in the amended bill, it was sought to have the premises charged with an express trust to the extent of the $824 invested therein by Mary P. Humphrey and Granville Humphrey. The defendants in their answer relied upon the Statute of Frauds.

After Edward W. Humphrey's death a memorandum book containing entries in his handwriting was found in a

desk of his mother which he used. On one page the book showed the cost of the lot, the contract price for the house and about a dozen items of extras, the whole amounting to $1681.57. On the next page, under the heading, "Mrs. M. P. Humphrey.—House.—Dec. 1887," appear the words, "Invested $700," and two other small items, the total being $702.15. On the third page, under the heading, "G. M. H.— House.—May 10, 1888," appear four items of cash at different dates, from November 22 to May 10, and one without date, "from bank," the total being $124. There is no signature any place in the book. These memoranda do not purport to state any agreement in reference to the money or the property, or any liability or understanding in that regard. They have no tendency to manifest or prove a trust in Edward W. Humphrey, even if they were signed by him. Nor does the will of Edward W. Humphrey have any such tendency to manifest a trust in him. It contains no intimation that he is not the absolute owner of the property disposed of, but by the will he purports to dispose of it as absolute owner.

The legacies of $824 given by the will are, however, by its terms made a charge on the real estate and until paid constitute a lien thereon. (*Stickel* v. *Crane,* 189 Ill. 211.) The surviving executrix held the title in trust for the payment of such legacies. She was not authorized by the will to sell the real estate for the payment of the debts of the estate but only to pay the legacies. She could sell for the payment of debts only by obtaining a decree of the court for that purpose. The appellants had actual and constructive notice of the will of Humphrey. If they had paid cash and the executrix had failed to pay the legacies it would then be important to determine whether the appellants were bound to see that the purchase money was properly applied, but since the conveyance was made in settlement of a claim against the estate of Edward W. Humphrey and only a trifling amount was paid in cash, the question of the ap-

plication of the purchase money does not arise. Nor does any question of estoppel, for there is no evidence that Granville M. Humphrey ever contemplated a sale except for cash. Appellants knew when they received the deed that the will expressly charged the legacies on this real estate. They knew that their claim against the testator was first payable out of his personal property and that they had a mortgage on the personal property to secure it. The conveyance of the real estate, not for cash but in exchange for a claim against the estate of the testator, was in violation of the power of sale conferred by the will, and the circuit court properly held the title received by the appellees to be subject to the same equities in favor of the appellees as existed against it in the hands of the executrices.

The decree of the circuit court will be affirmed.

*Decree affirmed.*